# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:09-CV-00012-TBR

**BANTERRA BANK**                                                                                          **PLAINTIFF**

v.

**PAUL HENDRICK**                                                                                          **DEFENDANT**
**THOMAS L. OSBORNE**                                                      **DEFENDANT/THIRD PARTY PLAINTIFF**

v.

**WAYNE SHELTON, CPA**                                                              **THIRD PARTY DEFENDANT**

## MEMORANDUM OPINION

This matter comes before the Court upon Plaintiff, Banterra Bank's, Motion for Summary Judgment (Docket #12). The Defendant, Thomas L. Osborne, has filed a response (Docket #21). The Plaintiff has filed a reply (Docket #27). This matter is now ripe for adjudication. For the reasons that follow, Plaintiff's Motion for Summary Judgment is GRANTED.

## BACKGROUND

The American Justice School of Law (Law School) was organized and operated from 2004 until 2006. In the fall of 2005, the Law School needed financing to fund its operating costs. Paul Hendrick, the acting president of the Law School, contacted Banterra's president, Mike Hagan, in October 2005, to apply for a $150,000.00 line of credit loan. The line of credit was signed on October 11, 2005, and the loan was collateralized by a second mortgage against the Law School's real property and was guaranteed by Rudolph B. Bergfeld and Hendrick, who were the owners and officers of the Law School.

In the spring of 2006, the Law School needed additional funding and Hendrick met with Hagan again to apply for an increase in the Law School's line of credit. Hagan agreed to an increase

in the line of credit to $275,000.00, provided the loan was collateralized and secured as the first loan had been. On May 6, 2006, the requirements of collateralization and guaranty were met and the loan was consummated. In the fall of 2006, Bergfeld withdrew from the Law School and Thomas Osborne acquired an ownership interest in the Law School. Osborne owned a twenty percent interest in the Law School from September 11, 2006, until October 15, 2007. The Law School again needed additional funding and sought to increase the line of credit. On October 26, 2006, a third line of credit loan for $300,000.00 was consummated. The loan was again collateralized and there were two personal guaranty agreements executed by both Hendrick and Osborne. Osborne was serving on the Law School's Board of Directors at this time. The loan was fully secured by three lots of approximately ten acres each in Paducah's Information Age Park. At the time of the loan, the Law School reported to Banterra the lots were valued at $1,455,000.00.

The Law School was unable to pay the note on the stated maturity date, and subsequently filed for Chapter 7 bankruptcy relief. Banterra then notified Hendrick and Osborne of the Law School's default and made demand for payment of the note. The note remains unpaid. In the fall of 2008, Banterra filed a suit against the Law School. This suit was prosecuted in the Law School's Chapter 7 bankruptcy proceeding that was filed on September 23, 2008, *In Re*: American Justice School of Law, U.S. Bankruptcy Court, for Western District, Paducah Division, Bankruptcy Action No. 08-50929.

This action was filed on December 12, 2008, in McCraken County Circuit Court. It was removed to federal court based on diversity on January 20, 2009.

**STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The nonmoving party must present more than a mere scintilla of evidence in support of his position; the nonmoving party must present evidence on which the trier of fact could reasonably find for the nonmoving party. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

**DISCUSSION**

There are two primary issues to be addressed: whether Banterra may proceed against Osborne at this time and whether the Promissory Note, and thus the Commercial Guaranty, are void due to Hendrick lacking the authority to act on behalf of the corporation.

**I. Obligation to Proceed Against the Principal**

Under Kentucky law, a guarantor's liability to a creditor is determined by "[t]he intention of the parties to the contract of guaranty as gathered from the language, read in the light of attendant circumstances" as in the case of any contract. *McGowan v. Well's Trustee*, 213 S.W. 573, 577 (Ky. 1919); *see also Pittsburgh Plate Glass Co. v. Cassidy*, 238 S.W. 172 (Ky. 1922) (holding every guaranty is to be interpreted in the light of the declared or inferred purpose and intent of the parties as ascertained from the writing itself).

In Kentucky, a guaranty may be classified as either one for payment, an absolute guaranty, or one for collection, a conditional guaranty. "A guaranty that is subject to no conditions and contains an absolute promise to pay the outstanding indebtedness guaranteed is a guaranty of payment." *Sunnyside Homes of Rockledge, Inc. v. Gordon*, No. 2004-CA-001719-MR, 2006 WL 572920, *3 (Ky. App. Mar 10, 2006) (citing *Liberty Nat'l Bank and Trust Co. v. Russ*, 668 S.W.2d 567 (Ky. App. 1984)); *McGowan*, 213 S.W. at 577 ("An absolute guaranty is an unconditional promise of payment or performance on default of the principal.") If the guaranty is absolute, "the obligation of the guarantor becomes fixed as quick as the guaranty is acted upon and the credit extended." *McGowan*, 213 S.W. at 577. The Kentucky Court of Appeals, in *Yager v. Kentucky Title Company*, further explained that in the case of an absolute guaranty "the guaranty may proceed against the guarantor at once on default of the principal. The guarantor's liability is dependant upon

the same rule of law by which the liability of one who has broken his contract is determined." 66 S.W. 1027, 1028 (Ky. 1902). The Court went on to state that "[t]he most usual form of absolute guaranty is a promise to pay the debt at maturity if not paid by the principal debtor, and the guarantee may bring an action on default of payment at the date named against the guarantor." *Id.* (citations omitted).

Here, the Commercial Guaranty states that the "guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the indebtedness of Borrower to Lender....This is a guarantee of payment and performance not of collection." Looking to the language of the document as required by Kentucky law, this document is an absolute, unconditional guaranty. Similarly, the circumstances surrounding the issuance of the guaranty in no way indicate that this agreement was intended to be conditional. It appears the guarantee by Osborne was intended to replace that of Bergfeld who had withdrawn from the Law School. All attendant circumstances illustrate that all parties intended the relationship to continue as usual. The line of credit was extended on the same basis that it had been previously: collateralization and personal guarantee by the operating officers and directors of the corporation.

As stated, an absolute guaranty creates liability in the guarantor as soon as the guaranty is acted upon and credit extended to the borrower. *McGowan*, 213 S.W. at 577. Additionally, the absolute guaranty allows the lender to proceed against the guarantor immediately upon default of the principal. *Yager*, 66 S.W. at 1028; *see also Galbraith et al. v. Shores-Mueller Co.*, 199 S.W. 779, 780 (Ky. 1918) (holding on an absolute guaranty "the guarantor is unconditionally bound to satisfy the obligation at its maturity, and prior legal proceedings by the creditor against the principal debtor are not necessary to a recovery"). The lender, Banterra, therefore, is not required to proceed

5

against the principal, the Law School, before proceeding against the guarantors, Osborne and Hendrick

In this case, the Commercial Guaranty states clearly,

> [t]his is a guarantee of payment and performance and not of collection, so Lender can enforce this guarantee against guarantor even when Lender has not exhausted Lender's remedies against any one also obligated to pay the indebtedness or against any collateral securing the indebtedness, this guarantee or any other guarantee of the indebtedness.

Although this language is not required in order to provide the remedy of proceeding against the guarantor immediately, Kentucky law requires that the Court look to the intention of the parties within the document which controls. The Commercial Guaranty clearly states it was the intention of the parties at the time it was executed that the lender, Banterra, had the remedy of proceeding against the guarantors, Osborne and Hendrick, before exhausting its remedies against any other party or exhausting the collateral.

Additionally, each guarantor expressly waived any right to require the lender, Banterra, to first proceed against the Law School or the collateral. The Commercial Guaranty states:

> Except as prohibited by applicable law, guarantor waives any right to require Lender...(C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person...; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

The Defendant asserts, however, that the lender, Banterra, must first attempt collection of the debt from the principal pursuant to KRS 412.110. On the basis of this statute the Defendant contends that Banterra had only ten days to prosecute its claim against the principal and that only a specific waiver will allow a lender to pursue a guarantor without first seeking recovery from the

6

principal.

The statute[1] allows a surety, co-obligor, or co-contractor, to require a creditor to sue or issue and execution against the principal. KRS 412.110. The surety, co-obligor, or co-contractor must provide written notice to the creditor or his agent or attorney. *Id.* If the creditor does not "in good faith prosecute the suit with reasonable diligence . . . the cosurety, co-obligor, cocontractor . . . shall be discharged from all liability . . . ." *Id.* On the issue of waiver of notice the statute states: "[t]he written notice required in this section shall not be waived, unless the waiver is in writing. No waiver of the notice shall be pleaded as a defense or given in evidence, unless it is in writing."*Id.*

This Court interprets the language of the statute, with regard to the ten day requirement, differently than the Defendant. The statute is intended to apply to sureties, co-obligors, or co-contractors or one of several defendants to a judgment. These possible parties form two rather distinctive groups: sureties, co-obligors and co-contractors who are responsible due to a contractual document and a defendant held jointly and severally liable via a judgment. In the second sentence, the conjunction "or" pulls together two independent clauses. The first clause, "if the creditor does not in good faith prosecute the suit with reasonable diligence" is separate from the second clause "if the plaintiff does not, within ten days after judgment, sue out execution and in good faith prosecute

---

[1] The statute states in full: "A surety, co-obligor, or cocontractor, or one (1) of several defendants to a judgment may, by notice in writing served in person within the state on the creditor or plaintiff, or, if the plaintiff is a nonresident or absent from the place of his residence for the period of thirty (30) days consecutively, upon his agent or his attorney, require him to sue or issue execution. If the creditor does not in good faith prosecute the suit with reasonable diligence, or if the plaintiff does not, within ten (10) days after judgment, sue out execution and in good faith prosecute the collection, the cosurety, co-obligor, cocontractor, or defendant shall be discharged from all liability, except for his proper share according to the then existing condition of the several obligors, contractors, or defendants. In any joint suit against the whole, or separate suit against him, judgment shall be rendered against him separately, and only for such proper share. The written notice required in this section shall not be waived, unless the waiver is in writing. No waiver of the notice shall be pleaded as a defense or given in evidence, unless it is in writing." KRS 412.110.

the collection." This is consistent with the language of the statute. Logically, the legislature would not use both the language "in good faith prosecute the suit" and "in good faith prosecute the collection" to apply to the same object, e.g., the co-surety or defendant, since they mean essentially the same thing. Therefore, the Court finds that the ten day limitation applies only to the plaintiff who has a judgment against a defendant, joint and severally. The surety, co-obligor and cocontractors need only "in good faith prosecute the suit with reasonable diligence."

The Plaintiff in this case, Banterra, has presented evidence that it has "in good faith prosecute[d] the suit [against the principal] with reasonable diligence." Banterra provided the Court with Proof of Claim from its suit against American Justice Law School, the principal, in *In Re*: American Justice School of Law, U.S. Bankruptcy Court, for Western District, Paducah Division, Bankruptcy Action No. 08-50929. Banterra has also correctly asserted that due to the automatic stay provision under 11 U.S.C. §362, Banterra is precluded from prosecuting any additional suit against the Law School. As Banterra has met its statutory obligation to "in good faith prosecute the suit [against the principal] with reasonable diligence," Osborne is not discharged from all liability. Even if the Court had not interpreted the statute so that the ten day requirement was not applicable to a guarantor, Banterra had met this requirement by bringing suit against the Law School on October 9, 2008, during the bankruptcy case and well before the suit against the guarantors, Osborne and Hendrick, was filed.

As to the waiver, the statute states that waiver of the written notice required may be waived if in writing. In *Coombs v. Beneficial Finance Company*, the court discussed the issue of waiver, specifically the waiver of the requirement that the creditor proceed against the principal first. 549 S.W.2d 327 (Ky. App. 1977). The court held that there must be specific language waiving

8

"diligence in bringing suit." *Id.* at 328.  The general waiver of "any and all exemptions permitted by law to be waived" was too broad and required the creditor seek remedy from the principal before the guarantor. *Id.*  However, the court has held that specific language may constitute a waiver. *Owensboro Savings Bank & Trust Co.'s Receiver v. Haynes*, 136 S.W. 1004 (Ky. 1911).  In *Owensboro Savings Bank,* the court found the following language a suitable waiver: "[t]he parties hereto . . . hereby expressly waive presentment thereof for payment, notice of nonpayment, protest, and notice of protest and diligence in bring suit against any party hereto, either maker or indorser." The court held the language of the waiver unambiguous and explained, "[w]here a party has contracted away all right to demand diligence in bringing suit, he cannot afterwards give notice under the statute, and insist on that diligence which he has expressly waived. A contract cannot be defeated in this way."

The language of the waiver at issue in this case is likewise unambiguous.  The language is also specific as to which rights the guarantor is waiving.  The language, "guarantor waives any right to require Lender . . . (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person . . . ," specifically waives the rights of the guarantor to insist the lender proceed against the principal first.  As in the case of *Owensboro Savings Bank*, the Defendant can not contract away his rights to require the lender proceed against the principal first and then insist the lender proceed against the principal first.

The Court finds this Commercial Guaranty creates an absolute guarantee that is immediately enforceable against the guarantor without first proceeding against the principal or exhausting the collateral. Additionally, KRS 412.110 does not alter this ruling. The Plaintiff had proceeded against

the principal already with "reasonable diligence" and there was a specific and valid waiver of this right in the Commercial Guaranty.

**II. Validity and Enforceability of the Promissory Note**

Even though, in many circumstances, a corporation is considered a "person" under the law, a corporation may only act through its Board of Directors and is bound by the acts of its officers or agents made within the scope of their authority. *Har-Bel Coal Co. v. Asher Coal Min. Co.*, 414 S.W.2d 128 (Ky.1966). It is well settled law in Kentucky that "an officer of a corporation has no general authority to execute contracts on behalf of the corporation." *Id.* at 131. In fact, the authority of an officer to bind a corporation, "must come either from the by-laws or the board of directors, or the action of the officer must be of the nature that comes within the apparent scope of his employment . . . . The mere representations of a claimed agent, even when coupled with signing a paper in such capacity, are not sufficient to show his agency or extent thereof." *Id.* (citations omitted).

However, express authority to bind the corporation or approval by the Board of Directors may not be required in cases where the corporation receives the benefit of the unauthorized act. A corporation will be bound by the acts of its officers or agents in the regular course of business, even without specific authority having been granted by the Board of Directors, when the Directors appropriate the benefits of the act to the use of the corporation. *Enterprise Foundry & Machine Works v. Miner's Elkhorn Coal Co.*, 45 S.E.2d 470, 473 (Ky. 1931).

The Defendant contends that there was never any corporate organization meeting by the original Directors or any time after, there was no organization meeting of shareholders, and no directors have ever been elected by shareholders. The Defendant states there are no corporate

records kept and no corporate Board action ever authorized Hendrick to sign contracts or conduct business of any kind. In opposition, the Plaintiff has provided a document labeled "Corporate Resolution to Borrow." This document was signed by Hendrick and Osborne, and certifies Board approval of the loan. Additionally, the Plaintiff has provided documentation that the loan funds were placed into the corporation's account and were used for the benefit of the corporation.

Although the lack of corporate formalities would constitute an issue for the act of piercing the corporate veil, it does not appear to bear any weight on this issue. The fact that the loan funds were used for the benefit of the corporation establishes that, although there may have not been formal ratification or authorization, the corporation agreed to the formation of the contract and became bound by the action of its agent. The Court must look at the evidence presented in a light most favorable to the nonmoving party, the Defendant. However, even in a light most favorable to the Defendant, the evidence establishes that the Promissory Note is valid and enforceable.

The evidence submitted by the Defendant as to this issue is no more than a mere scintilla of evidence and the Court could not reasonably find for the Defendant based on the present evidence. As stated, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment." *Moinette*, 90 F.3d at 1177. The Defendant has not established that Hendrick had no authority to sign the Promissory Note on behalf of the Law School.

The Court finds, under Kentucky law, the Plaintiff may proceed against he Defendant at this time, without first proceeding against the principal or extinguishing the collateral. The Court also finds that the Promissory Note and the Commercial Guarantee are valid and enforceable: the Corporate Resolution to Borrow provides evidence Hendrick was authorized to sign the Promissory

11

Note; even if he was not, the corporation ratified the contract by accepting the benefit making it valid. Therefore, Defendant's Motion for Summary Judgment is GRANTED.

## CONCLUSION

For the foregoing reasons the Plaintiff's Motion for Summary Judgment is GRANTED. An appropriate order shall issue.