# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:09-CV-00012-TBR

**BANTERRA BANK**                                                        **PLAINTIFF**

**v.**

**PAUL HENDRICK**                                                 **DEFENDANT**
**THOMAS L. OSBORNE**                         **DEFENDANT/THIRD PARTY PLAINTIFF**

**v.**

**WAYNE SHELTON, CPA**                                **THIRD PARTY DEFENDANT**

## MEMORANDUM OPINION AND ORDER

In August 2009, Third Party Defendant, Wayne Shelton, C.P.A.'s, filed a Motion for Summary Judgment as to Osborne's counterclaims and Shelton's counterclaims against Osborne. (DN 25.) The Third Party Plaintiff, Thomas L. Osborne, filed no response.

On October 1, 2009, the Court filed a memorandum opinion (DN 31) and entered an order granting Shelton's motion for summary judgment (DN 32). Osborne filed a motion for an extension of time on the same day the Court's memorandum opinion and order was entered. (DN 28.) The Court granted Osborne's motion providing him until October 16, 2009, to file the necessary response and/or reply and vacated its memorandum opinion and order. (DN 34.) On October 19, 2009, Osborne filed a reply to Plaintiff Banterra's motion for summary judgment; however, no response was filed to Shelton's motion. (DN 35.)

A telephonic status conference was held on March 5, 2010. (DN 40.) At this time, the Court again granted Osborne additional time to respond to Shelton's motion for summary judgment. The Court ordered Osborne to respond by March 26, 2010. The Court further ordered the reply to be filed by April 9, 2010. No pleadings have been filed. This matter is now ripe for adjudication. For

the reasons that follow, the Third Party Defendant's Motion for Summary Judgment is GRANTED.

**BACKGROUND**

On or about November 17, 2007, Thomas Osborne, filed a civil action ("2007 Class Action") against Wayne Shelton and others, on behalf of himself and others. Osborne alleged mismanagement of the American Justice School of Law (AJSL), and, among other things, alleged the commission by Shelton of numerous acts of fraud which allegedly damaged Osborne. A Settlement Agreement and Reciprocal Release (the "Agreement and Release") was entered into on February 15, 2008, by Osborne and Shelton, as well as others, with respect to the 2007 Class Action and all claims which were asserted, or could have been asserted, therein. On February 18, 2008, an order was entered by this Court that "all claims asserted or which could be asserted" in the 2007 Class Action were dismissed with prejudice.

> The Agreement and Release states that it represented a
>
> FULL AND FINAL SETTLEMENT of any and all claims, debts, suits, actions and causes of action of whatsoever kind or nature, whether civil or administrative, or complaints with any administrative agency or private organization or professional association or licensing agencies, whether at law, in equity or mixed, whether matured, contingent or inchoate, and whether known or unknown, that any party, now has, has had or may hereafter have against any other party, their predecessors, affiliates, successors, assigns, officers, directors, shareholders, employees, agents, representatives, and insurers, in any way, manner or degree arising from or related to the subject matter of the civil actions, or the making of this agreement, or any other aspect whatsoever of the organization or operation of AJSL or its law school from the beginning of time through the effective date of this Agreement.
>
> Additionally, in the second paragraph, "General and Complete Reciprocal Release," Osborne

stated that he

> forever and irrevocably dischare[d] and release[d] any and all claims, debts, suits, actions and causes of action of whatsoever kind or nature, whether at law, in equity or mixed, whether matured, contingent or inchoate, whether known or unknown that any party, now has, has had or may hereafter have against any other party, in any

2

way, manner or degree arising from or relating to any act, omission, occurrence or transaction occurring in whole or in part prior to the date of this agreement.

The agreement lists the $296,885.00 debt to Banterra Bank, the debt involved in the present action, as a debt to which Osborne would indemnify Shelton.

This current action was filed by Banterra Bank against Osborne and Paul Hendrick on December 12, 2008, in McCraken County Circuit Court. It was removed to federal court based on diversity on January 20, 2009. This action concerns the October 26, 2006, line of credit loan for $300,000.00. The loan was collateralized and there were two personal guaranty agreements executed by both Hendrick and Osborne. Osborne was serving on the Law School's Board of Directors at this time. The loan was fully secured by three lots of approximately ten acres each in Paducah's Information Age Park. At the time of the loan, the Law School reported to Banterra the lots were valued at $1,455,000.00. The Law School was unable to pay the note on the stated maturity date, and subsequently filed for Chapter 7 bankruptcy relief. Banterra then notified Hendrick and Osborne of the Law School's default and made demand for payment of the note. The note remains unpaid.

Osborne filed a Third Party Complaint and Answer of the Defendant on February 25, 2009. Osborne alleges in his Third Party Complaint that Shelton is liable to Osborne for the debt to Banterra Bank because Shelton misrepresented information to Osborne which induced him to guaranty that debt personally. Shelton filed a Counterclaim with his Answer on April 20, 2009, alleging Osborne breached the Agreement and Release. Shelton moves for summary judgment as to Osborne's claims against him and his claims against Osborne for breach of the Agreement and Release. Shelton requests dismissal of the action, as well as attorneys fees and litigation costs.

**STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The nonmoving party must present more than a mere scintilla of evidence in support of his position; the nonmoving party must present evidence on which the trier of fact could reasonably find for the nonmoving party. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

**DISCUSSION**

Shelton has asserted that the claims of Osborne in the Third Party Complaint are barred by res judicata and the release affirmed in the Agreement and Release. Shelton also asserts that he is entitled to judgment as a matter of law as to his claims against Osborne arising from breach of the Agreement and Release.

**I. Res Judicata**

Res judicata, or claim preclusion, "is a bar to a subsequent action where a former judgment has been rendered by a court of competent jurisdiction between the same parties upon the same matter directly involved in the prior suit. *Wallace v. Ashland Oil & Transp. Co.*, 305 S.W.2d 541, 543-44 (KY. 1957). The scope of the doctrine is very broad:

> [t]he rule is elementary that, when a matter is in litigation, parties are required to bring forward their whole case; and 'the plea of res judicata applies not only to the points upon which the court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.'

*Combs v. Prestonsburg Water Co.*, 84 S.W.2d 15, 18 (Ky. 1935) (internal citations omitted). Therefore, "res judicata [is] applicable not only to the issues disposed of in the first action, but to every point which properly belonged to the subject of the litigation in the first action and which in the exercise of reasonable diligence might have been brought forward that the time." *Egbert v. Curtis*, 695 S.W.2d 123 (Ky. App. 1985) (citing *Hays v. Sturgill*, 193 S.W.2d 648 (Ky. 1946)). The doctrine of res judicata is applicable regardless of whether there is a judgment by the court or a settlement agreement by the parties. The Kentucky courts have long held "[i]n general, a judgment by agreement, consent or compromise bars a subsequent action on the same cause of action." *Blevins v. Johnson*, 344 S.W.2d 375, 377 (Ky. 1961).

5

The parties in this case are the same as the parties to the 2007 Class Action from which the Agreement and Release arose. In the 2007 Class Action, Osborne represented the class members as counsel and was an individual plaintiff as well. Shelton was a named defendant against which Osborne, in his individual capacity, asserted claims specifically. The issue to be determined is whether the Agreement and Release bars the alleged fraud and breaches of fiduciary duty now asserted by Osborne.

When analyzing the Agreement and Release the Court must treat it as any contract and follow the rules of interpretation. In deciding a similar issue, the Kentucky Supreme Court explained,

> '[a]n agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation.' The primary objective is to effectuate the intentions of the parties. When no ambiguity exists in the contract, we look only as far as the four corners of the document to determine the parties' intentions. 'The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms.' 'Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to de novo review.'

*3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005).

The Agreement and Release in this case is clear and unambiguous. The heading of the first paragraph states "Final Settlement of All possible Claims" and in all capital letters in the same paragraph it states "FULL AND FINAL SETTLEMENT." The Agreement and Release goes on to list all the claims that are being released:

all claims, debts, suits, actions and causes of action of whatsoever kind or nature, whether civil or administrative, or complaints with any administrative agency or private organization or professional association or licensing agencies, whether at law, in equity or mixed, whether matured, contingent or inchoate, and whether known or unknown, that any party, now has, has had or may hereafter have against any other party, their predecessors, affiliates, successors, assigns, officers, directors,

6

shareholders, employees, agents, representatives, and insurers, in any way, manner or degree arising from or related to the subject matter of the civil actions, or the making of this agreement, or any other aspect whatsoever of the organization or operation of AJSL or its law school form the beginning of time through the effective date of this Agreement.

It is also clear that the claims asserted by Osborne in the Third Party Complaint arise from or relate to the subject matter of the 2007 Class Action. In the 2007 Class Action case, Osborne asserted many of the same claims against Shelton as he has in the Third Party Complaint: fraud, breach of fiduciary duty, and negligence for failure to disclose the true financial condition of AJSL inducing Osborne to personally guaranty loans. Each of these claims, in both cases, stem from the same operative facts and the same debt to Banterra Bank is specifically addressed in each.

The Court finds that the claims of Osborne against Shelton in the Third Party Complaint are barred by res judicata.

**II. Release**

A properly executed release can bar the assertion of the claims released, whether or not there is an underlying lawsuit that is simultaneously dismissed. *See Daniel v. Turner*, 320 S.W.2d 135, 136 (Ky. 1959); *McCredie v. Lloyd*, 259 S.W.2d 51 (Ky. 1953). "The validity and scope of a release is determined by the intent of the parties, which must be gathered from the terms of the release in light of the particular facts and circumstances." *Liggons v. House & Associates Ins.*, 3 S.W.3d 363, 365 (Ky. App. 1999) (citing *Leitner v. Hawkins*, 311 Ky. 300, 223 S.W.2d 988 (1949)). The Agreement and Release is clear and unambiguous. The Agreement and Release states: that all parties

> forever and irrevocably discharge and release any and all claims, debts, suits, actions and causes of action of whatsoever kind or nature, whether at law, in equity or mixed, whether matured, contingent or inchoate, whether known or unknown that any party, now has, has had or may hereafter have against any other party, in any way, manner or degree arising from or relating to any act, omission, occurrence or

7

transaction occurring in whole or in part prior to the date of this agreement.

Osborne received valuable consideration for the release of his claims as Shelton, and other defendants, transferred stock to Osborne and resigned from positions held with AJSL. There can be no other intention of the parties than to release all claims, including the claims asserted by Osborne against Shelton in the Third Party Complaint.

While the language of the Agreement and Release is clear, the Court, in looking at the circumstances of the Agreement and Release, must note that Osborne was the author of the document. "No rule is better established than that, when a contract is susceptible of two meanings, it will be construed strongest against the party who drafted and prepared it." *Theatre Realty Co. v. P.H. Meyer Co.*, 48 S.W.2d 1, 2 (Ky. 1932). Therefore, if the document had been ambiguous as to the release it would be construed against Osborne.

The Court, in determining whether summary judgment is proper, must look at the facts in the light most favorable to the nonmoving party, here Osborne. Even in a light most favorable to Osborne, the facts establish that the claims in the Third Party Complaint arose from the same subject matter as the 2007 Class Action and involved the same parties, and, thus, are barred by the doctrine of res judicata. Additionally, Osborne, pursuant to the Agreement and Release, released all of his claims against Shelton. There has been no fraud alleged with respect to the Agreement and Release. Therefore, the Third Party Defendant's Motion for Summary Judgment is GRANTED as to Osborne's claims against Shelton.

**III. Third Party Defendant Shelton's Counterclaims**

Shelton asserts in his Answer to the Third Party Complaint a counterclaim for breach of the Agreement and Release against Osborne. This claim for breach of the Agreement and Release arises

from the affirmation of Osborne in the Agreement and Release that he would not "represent any person in any action against . . . Shelton." Additionally, Osborne agreed that "all adverse, negative or critical statements made by any individual party or their agents shall constitute a material violation of this agreement."

The Court, when interpreting the Agreement and Release must interpret it as any other contract: only looking to extrinsic evidence if the document is ambiguous. If there is no ambiguity, the document "will be enforced strictly according to its terms." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). Osborne has alleged no ambiguity, nor fraud with respect to the Agreement and Release and the Court finds none. Common sense dictates that by representing himself in a suit against Shelton, Osborne is violating the agreement by representing "any person in any action against . . . Shelton." Strictly enforcing the terms of the Agreement and Release, the Court finds that Osborne has breached the Agreement and Release by representing himself in an action against Shelton.

Shelton asserts that Osborne further breached the Agreement and Release by making comments that were adverse, negative, or critical in the Third Party Complaint. Shelton argues that Osborne waived any privilege he had to make such statements in court pleadings by signing the Agreement and Release. While it is less clear whether the statements in the Third Party Complaint are adverse, negative or critical, the Court finds they are within the absolute privilege of judicial proceedings. Kentucky Courts have consistently held that "statements in pleadings filed in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry." *Schmitt v. Mann*, 163 S.W.2d 281, 283 (Ky. 1942).

While Shelton is correct that the Agreement and Release is unambiguous and contains no

exception for the media through which the statements are made, the Court has found no case law which permits the waiver of an absolute immunity. An absolute immunity is simply absolute and, under existing law, can not be waived, even by a contractual agreement such as the Agreement and Release. This does not take away the effect of this clause of the Agreement and Release. The purpose of the clause at issue in the Agreement and Release was to control the adverse, negative and critical statements made about parties associated with AJSL in order that AJSL may obtain American Bar Association accreditation. Court pleadings are generally open to the public; however, the parties retain the remedy of filing under seal and requesting protective orders in order to diminish the effects of adverse, negative or critical information in court pleadings.

The Court finds that Osborne did not breach the Agreement and Release by giving adverse, negative or critical statements about Shelton in the Third Party Complaint. This does not alter the holding that the Agreement and Release has been breached by Osborne. Therefore, the Third Party Defendant's Motion for Summary Judgment is GRANTED as to Shelton's counterclaim against Osborne. Shelton is entitled to reasonable costs and attorney's fees pursuant to the Agreement and Release. Shelton shall file a motion for attorney's fees within twenty one days.

## CONCLUSION

For the foregoing reasons the Plaintiff's Motion for Summary Judgment is GRANTED. An appropriate order shall issue.